IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GENE W. STOKER, ) | |
| ) | |
| Plaintiff, ) | Case No. CV03-175-S-EJL |
| ) | |
| vs. ) | ORDER |
| ) | |
| MOBEX COMMUNICATIONS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court in the above-entitled matter are Plaintiff's motion for partial summary judgment, motions to strike, motions in limine, and motion to amend scheduling order. The parties have filed responsive briefing and the matters are now ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1.

**FACTUAL AND PROCEDURAL BACKGROUND**

The dispute in this matter involves the parties' disagreement as to the interpretation of a stock option agreement. In 1991 Plaintiff, Gene Stoker, sold his two-way radio business to Idaho Communications Limited Partnership ("ICLP"). The sale included ICLP's acquisition of assets from the business including certain communications licenses. As a condition of that sale Mr. Stoker agreed to defer a partial payment of $1,000,000 and entered into an Employment Agreement whereby he became an employee of ICLP. The Employment Agreement provided that in the event "substantially all of the Business" was sold that ICLP would pay Mr. Stoker a "Participation Bonus" that amounted to, at a minimum, the deferred partial payment of $1,000,000. In that agreement, the "Business" was defined as the assets acquired from Mr. Stoker during the initial sale.

In 1995, certain individuals involved with ICLP formed Defendant Mobex Communications, Inc. ("Mobex"), which then acquired ICLP and all of its assets. Mobex requested that Mr. Stoker not execute the payment of the Participation Bonus provision of his Employment Agreement to which Mr. Stoker agreed. Mobex and Mr. Stoker then entered into a Stock Option Agreement which includes a provision, Section 9, providing that Mr. Stoker may cash-out his stock options in the event of "any voluntary or involuntary liquidation, dissolution or winding up of the Company." It is this section of the parties' contract upon which this dispute is based.

In 2001, Mobex sold a substantial number of its assets to Nextel Communications, Inc. ("Nextel") including all of the assets originally acquired by ICLP from Mr. Stoker. As a result, Mr. Stoker argues, Section 9 of the parties agreement was triggered and he is entitled to payment as directed by the contract. Mobex, on the other hand, maintains that Section 9 has not been triggered because the sale of assets was not a "liquidation, dissolution or winding up of the Company" but, instead, the company still exists. Mr. Stoker filed his complaint and the instant motion for summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997). Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue

of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted). Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

1) Motions to Strike and Motions in Limine:

Mobex filed a motion to strike exhibit 11 from the declarations of Richard Young and Gene Stoker and all references thereto as inadmissible hearsay. (Dkt. No. 54). Exhibit 11 relates to a letter from Chris O'Connell, former counsel for Mobex. In addition, Mobex has filed a motion in limine to assert attorney-client privilege and exclude testimony and evidence from Mr. O'Connell.

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

ORDER - Page 3
05ORDERS\STOKER.WPD

(Dkt. No. 73). The Court did not consider this evidence in deciding this motion but will take these motions under advisement as to the admissibility of such evidence at trial.

Mr. Stoker has also filed a motion to strike portions of the affidavit of Michael Monier, October 8, 2004, and other evidentiary objections. (Dkt. No. 61). The motion argues the affidavit states improper legal conclusions, violates the "best evidence" rule, and lack of foundation and personal knowledge. This evidence was not utilized by the Court in ruling on this motion for summary judgment. The motion to strike is therefore moot.

In addition, Mr. Stoker filed a motion in limine to exclude evidence of other Mobex stock option agreements. (Dkt. No. 67). The motion asks that the Court exclude such evidence on the grounds that it is irrelevant and prejudicial. The Court did not consider this evidence in deciding this motion. As to whether such evidence is proper at trial, the Court will deny the motion at this point in the proceedings but allow counsel to refile such motion in accordance with the pretrial filing deadlines if necessary once the trial date is scheduled.

Mobex has also filed a motion in limine seeking to exclude the testimony of Plaintiff's expert witness Mark Renberg arguing his opinion lacks foundation or indices of reliability necessary to satisfy the Daubert standard. (Dkt. No. 71). Mr. Stoker has not yet responded to this motion and is directed to do so within ten days of the date of this order. Mobex then may file any reply briefing as directed in the Federal Civil Rules of Procedure. The Court will then render its decision on this motion.

2)      Motion for Summary Judgment:

The parties dispute in this case centers around the interpretation of Section 9 of the parties' Stock Option Agreement, which states:

> 9. Liquidation Value. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Company, the Optionee shall be entitled to receive in cash out of the assets of the Company, whether from capital or from earnings, available for distribution to its stockholders, before any amount shall be distributed to such stockholders on account of their capitol stock of the company, the amount set forth below opposite the calendar year in which such event occurs for each Option Share as to which this Option is then exercisable but has not yet been exercised.

Mr. Stoker argues this option was triggered upon Mobex's sale of a majority of its assets to Nextel, which included the assets Mr. Stoker originally sold to ICLP and then were subsequently sold to Mobex. The sale, Mr. Stoker alleges, evidence Mobex's decision to change the "focus of its business to that of providing automated maritime telecommunications services" from its previous operations in radio and pager services; thus, such a sale of substantial assets and shift in the focus of the material aspects of the business invokes the provisions of Section 9. Mobex, on the other hand, maintains that Section 9 has not been invoked in this case and, at a minimum, genuine issues of material fact exist as to this issue which preclude entry of summary judgment. Mobex maintains that the company has not wound-up or dissolved its existence but, instead, is still actively engaged in the telecommunications business.

In support of his argument, Mr. Stoker points out that during the contract negotiations he insisted that Section 9 include the word "any" so as to ensure that Section 9 would be invoked if Mobex sold some but not all of its assets. Mr. Stoker argues the individuals involved in the negotiation, drafting, and executing of the stock option agreement all understood and intended that Section 9 would be triggered upon such a sale of assets. Mobex disagrees with the emphasis placed upon the word "any." Instead, Mobex suggests the lack of a definition as to the magnitude of the word "any" causes confusion with the legal definition of a "liquidation" as used in Section 9. Thus, the confusion raises factual questions as to how large a sale of assets must be in order to satisfy the "any" modifier in Section 9.

In general, contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Id. (citing Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1549 (9th Cir. 1989)). Whenever possible, the plain language of the contract should be considered first. Id. (citations omitted). The parol evidence rule is based on the "well- settled principle that an agreement reduced to writing serves to integrate all prior agreements and negotiations concerning the transaction into the written instrument which then represents the final and complete agreement of the parties." State Farm Fire and Casualty Company v. Pacific Rent-All, Inc., 978 P.2d 753, 762 (D. Hawaii 1999). The parol evidence rule is a doctrine of contract law, not of evidence law. Chavez v. Dir., Office

of Workers Comp. Programs, 961 F.2d 1409, 1413 (9th Cir. 1992).  Generally, the parol evidence rule precludes the use of extrinsic evidence to contradict the terms of an integrated unambiguous written agreement.  See Gumport v. AT & T Techs., Inc. (In re Transcon Lines), 89 F.3d 559, 568 (9th Cir. 1996); Wilson Arlington Co. v. Prudential Ins. Co. of Am., 912 F.2d 366, 370 (9th Cir. 1990).  The parol evidence rule applies where parties to a contract have reduced their agreement to a writing and one party seeks to use evidence of prior agreements to add to or modify the terms of the writing.  DP Aviation v. Smiths Industries Aerospace and Defense Systems Ltd., 268 F.3d 829, 838 (9th Cir. 2001) (applying Washington state law).  The interpretation of a contract is a mixed question of law and fact.  See O'Niell v. United States, 50 F.3d 677, 682 (9th Cir. 1995).

Whether contract language is ambiguous is a question of law.  See id.  A contract provision is ambiguous if it is subject to conflicting interpretations.  Lewis v. ECDU Educational Services, Inc., 15 P.3d 1147 (2000).  "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous; it is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation."  Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 2000) as amended (quoting Kennewick, 880 F.2d at 1032).

Where a contract is determined to be unambiguous, however, the Ninth Circuit is in full accord with the traditional contract principle that extrinsic evidence is inadmissible to interpret, vary or add to the terms of an unambiguous integrated written instrument.  Roberts v. Hollandsworth, 582 F.2d 496 (9th Cir. 1978) (citing United States, etc. v. Haas & Haynie Corp., 577 F.2d 568, 571-572 (1978)); see also Trident Center v. Connecticut General Life Ins. Co., 847 F.2d 564, 568 (9th Cir. 1988) (discussing California state law) (citing 4 S. Williston, A Treatise on the Law of Contracts § 631, at 5 (3d ed. 1961)).  Thus, where a contract is unambiguous on its face, "under the parol evidence rule, a court looks to, and enforces, the plain language of a contract and does not look to 'extrinsic evidence to interpret the terms of an unambiguous written instrument."  United States v. Nunez, 223 F.3d 956, 958 (9th Cir. 2000) (determining a plea agreement was unambiguous on its face) (citations omitted).

ORDER - Page 6
05ORDERS\STOKER.WPD

Having considered the parties' arguments and the record herein, the Court finds Section 9 of the contract is ambiguous. The question of what is required to invoke Section 9 is subject to conflicting interpretations. The use of the word "any" and "liquidation" present ambiguity in interpreting Section 9. The Court also finds that the resolution of the issues in this matter involves genuine issues of material fact. While it seems that the parties could stipulate to many of the surrounding facts in this matter, the underlying questions regarding Section 9 are clearly based on factual disputes. In construing the arguments in favor of the non-moving party, as the Court must, there exists questions of fact which require a jury to weigh and decide.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court **HEREBY ORDERS** as follows:

1) Plaintiff's Motion for Partial Summary Judgment and Declaratory Ruling (Docket No. 47) is **DENIED**.

2) Defendant's Motion to Strike (Dkt. No. 54) and Motion in Limine (Dkt. No. 73) are **UNDER ADVISEMENT**.

3) Plaintiff's Motion to Strike (Dkt. No. 61) is **MOOT**.

4) Plaintiff's Motion in Limine (Dkt .Nos. 67) is **DENIED** with a right to renew.

5) Defendant's Motion in Limine (Dkt. No. 71) is **UNDER ADVISEMENT**. Plaintiff is directed to file a response within ten (10) days of the date of this order. Any reply brief shall be filed as provided in the applicable rules.

6) Defendant's Motion to Amend Scheduling Order (Dkt. No. 77) is **DENIED**.

7) The parties are directed to confer and submit a joint stipulation of three proposed trial dates within fifteen days (15) of the date of this order. The Court's available trial weeks are July 5, 2005, July 26, 2005, August 9, 2005, August 16, 2005, August 30, 2005, September 6, 2005, and September 20, 2005.

DATED: **May 16, 2005**

Honorable Edward J. Lodge
U. S. District Judge